NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

----------------------------------------------------------------X

In re:                                                                Bankruptcy Case No. 13-23834

Gary W. Schecher                                           Chapter 7

        Debtor.
----------------------------------------------------------------X
Lu Yang and Xiangdong Hu

        Plaintiff(s),

vs.                                                                    Adversary No. 13-1987

Gary W. Schecher
                                                      **MEMORANDUM OPINION**

        Defendant.
----------------------------------------------------------------X

**APPEARANCES**

<u>Attorneys for Plaintiff</u>
Yiling Wang, Esquire
Law Offices of Zhiyu Hu
151 Washington Avenue
Edison, New Jersey 08817

<u>Attorney for Defendant</u>
Michael P. Laffey, Esquire
Messina Law Firm
961 Holmdel Road
Holmdel, New Jersey 07724

Lu Yang and Xiangdong Hu ("Plaintiffs") filed an amended complaint[1] against Gary Schecher based on 11 U.S.C. § 523(a)(2)(A) and § 727(a)(4)(A). The court tried the matter on April 2, 2015, and reserved decision. The court now issues its findings of fact and conclusions of law.

## Procedural history

Gary Schecher filed a voluntary Chapter 7 petition on July 8, 2013. Mr. Schecher had a previous Chapter 7 bankruptcy filing in 1995. The Plaintiffs filed their initial complaint on October 5, 2013. The parties filed motions for summary judgment, which the court denied as moot because it granted the Plaintiffs' motion to file an amended complaint. In November 2014, the court denied the parties' motions for summary judgment on the Amended Complaint based on the numerous disputed material facts.

## Findings of fact

The Plaintiffs immigrated to the United States from China in May 2009. Mr. Schecher is a real estate developer with 20 years of experience. The parties were introduced by the Plaintiffs' former real estate agent, Julie Hsu, for the purpose of having them invest in a development project Mr. Schecher was undertaking in Tinton Falls, NJ. For the purposes of the transactions at issue, Ms. Hsu acted as the Plaintiffs' intermediary/interpreter. In December 2009, the Plaintiffs and Mr. Schecher signed an Agreement and Promissory Note,[2] the essential terms of which were that the Plaintiffs agreed to pay Oak Hill at Tinton Falls, LLC ("Oak Hill") $200,000, and to be repaid $400,000 within 18 months. Mr. Schecher personally guaranteed the repayment. In the Agreement, Mr. Schecher identified himself as the managing member of Oak Hill, and Oak Hill was identified as the contract purchaser of the parcels of land in Tinton Falls. Despite the

---

[1] At trial, the Plaintiffs further amended the complaint by striking various paragraphs and sentences from the Amended Complaint.
[2] Ex. 5

2

language of the Agreement, Oak Hills played no role in the project in which the Plaintiffs invested.

In March 2010, the Plaintiffs delivered a check to Mr. Schecher in the amount of $85,000. In November 2010, the Plaintiffs delivered a check to Mr. Schecher in the amount of $115,000. Mr. Schecher wrote "Boulder Development, LLC" as the payee on both of the Plaintiffs' checks.[3] Mr. Schecher told Ms. Yang that Boulder Development, LLC was the parent company of Oak Hills, but the operating agreements[4] of those entities do not reveal any parent-subsidiary relationship between the two companies. In June 2012, the Plaintiffs requested that Mr. Schecher return their investment. In September 2012, the Plaintiffs sent Mr. Schecher a formal demand letter.[5] To date, neither Mr. Schecher nor any of the entities he controls have repaid the Plaintiffs' for their initial investment or anticipated return.

At the time Mr. Schecher filed his bankruptcy petition, he had two cars titled in his name: a 2003 Infinity and a 2011 Hyundai. His wife owned a 2006 Volvo. No vehicles were listed in the petition and schedules. In the six years preceding his bankruptcy filing, Mr. Schecher had a greater than 5% interest in at least 16 companies. In Schedule B, Mr. Schecher indicated that he owned stock in three companies and reported the value of his interest in each company as "zero." In the Statement of Financial Affairs, Mr. Schecher checked "none" in response to a question that required the debtor to list all businesses "in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case." Schedule I lists Mr. Schecher's occupation as "real estate agent" with income reported as zero. His wife's income or occupation were not disclosed on Schedule I, despite the fact that Schedule I notes that his wife contributes $1,900 a month to cover household expenses. Schedule

---

[3] Ex. 8
[4] Ex. 3; Ex. 9
[5] Joint Stipulation of Undisputed Facts at para. 63

3

J shows an expense for "spousal contribution" of $1,830 a month. Mr. Schecher never filed an amendment to these schedules or the Statement of Financial Affairs.

Conclusions of law

**A. Dischargeability under 11 U.S.C. § 523(a)(2)(A)**

The Bankruptcy Code denies bad actors "the opportunity for a completely unencumbered new beginning" by excepting certain debts from discharge.[6] Section 523(a)(2)(A) denies a debtor relief from "any debt ... for money, property, services, or ... credit, to the extent obtained by false pretenses, a false representation, or actual fraud." This restriction evidences Congress's conclusion that a creditor's "interest in recovering full payment of debts" at times outweighs the debtor's "interest in a complete fresh start."[7]

As in all § 523 cases, the burden of proof is on the creditor to establish all of the elements of § 523(a)(2)(A) by preponderance of the evidence.[8] Under this Code section, a creditor must show: 1) that the debtor obtained money, property or services through a material misrepresentation; 2) that the debtor at the time knew that the representation was false or made with gross recklessness as to its truth; 3) that the debtor intended to deceive the creditor; 4) that the creditor justifiably relied on the misrepresentation; and 5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representation.[9]

The first element can be broken down into two sub-elements: 1) the debtor obtained money, property or services; and 2) that it was obtained through a material misrepresentation. Initially, it appears that the Plaintiffs cannot satisfy the first sub-element, because the debt at issue in this case was not obtained Mr. Schecher in his individual capacity. The Plaintiffs

---

[6] Grogan v. Garner, 498 U.S. 279, 286–87 (1991) (internal citations omitted)
[7] Id. at 287
[8] Grogan v. Garner, 498 U.S. 279 (1991)
[9] *Field v. Mans*, 516 U.S. 59 (1995)

4

believed they were investing with Oak Hill, and the two checks from the Plaintiffs totaling $200,000 were payable to Boulder Development, LLC.

Fortunately for the Plaintiffs, the Supreme Court takes a broad reading of the phrase "to the extent obtained by" in § 523(a)(2)(A). As the Supreme Court explained:

> Moreover, the phrase "to the extent obtained by" in § 523(a)(2)(A) … does not impose any limitation on the extent to which "any debt" arising from fraud is excepted from discharge.... The phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud ... "any debt" arising therefrom is excepted from discharge.[10]

Here, the "specific money" that was allegedly obtained by fraud was $200,000, and Mr. Schecher's personal guarantee of repayment of that amount is "any debt arising therefrom." To be clear, it is only the debt arising from Mr. Schecher's personal guaranty that is at issue here. The Amended Complaint did not seek to pierce the corporate veil, so any money that might be due from Oak Hill or Boulder Development, LLC is beyond the scope of this bankruptcy case.

Next, the Plaintiffs must establish that there was a material misrepresentation. On this issue, the Plaintiffs focused on the wrong transaction. In Count One of the Amended Complaint the Plaintiffs allege that "Defendant knowingly made a misrepresentation that Oak Hill @ Tinton Falls, LLC was a contract purchaser of Parcel A and Parcel B," and that he also knowingly misrepresented that "Oak Hill had been pursuing the Borough to grant a zoning change of the property."[11] Those alleged misrepresentations have no bearing on the Plaintiffs' obligation to establish that Mr. Schecher made a material misrepresentation regarding his personal guaranty. The evidence the Plaintiffs produced at trial also focused on Mr. Schecher's representations regarding the project in Tinton Falls. The only allegation in the Amended Complaint that

---

[10] *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998)
[11] Amended Complaint at para. 32 & 33

addresses the guaranty states that Mr. Schecher "volunteered his unconditional personal guaranty for Plaintiffs' principal and investment proceeds in the amount of $400,000, whereas he had never intended to guarantee Plaintiffs' return. After he had control over Plaintiffs' fund, [sic] he never acknowledged his obligation under his personal guarantee, but always conditioned Plaintiffs' return on the outcome of his project."[12] The problem with this allegation, and the testimony adduced at trial, is that it focuses on the wrong time period. To be nondischargeable under § 523(a)(2)(A) a misrepresentation must have been materially false at the time it was made.[13] The Plaintiffs appear to want the court to conclude that Mr. Schecher did not intend to honor his guaranty when he offered it, based solely on the fact that he did not ultimately honor it. The Plaintiffs invested in Mr. Schecher's company's development project in 2009, but they did not demand the return of their money until 2012. The fact that Mr. Schecher did not have the financial wherewithal in 2012 to honor his guaranty, while somewhat relevant to a determination of whether he had the intent to honor it in 2009, cannot alone form a preponderance of the evidence regarding his intent at the time of the transaction. At trial, Mr. Schecher testified that he always intended to honor his personal guaranty, and that if any of his development projects succeeded he would have done so. From that, the Plaintiffs want the court to conclude that Mr. Schecher obviously did not intend to personally guarantee their repayment because he tied repayment to the success of his development projects. That conclusion is not warranted. Mr. Schecher was the sole or primary owner of most the corporations he created. His personal income was inextricably tied to the success of his development projects. So it is not evidence of intent not to honor a personal guaranty for Mr. Schecher to admit that he would not have the funds if his businesses did not succeed. The Plaintiffs did not present any evidence to the

---

[12] Amended Complaint at para. 35
[13] *In re White*, 128 Fed. Appx. 954 (4th Cir. 2005)

6

contrary, such as evidence that Mr. Schecher had personal wealth independent of his businesses but still refused to honor the guaranty. When Mr. Schecher's testimony is weighed against the dearth of evidence presented by the Plaintiffs on the issue of Mr. Schecher's intent in 2009, it is clear that the Plaintiffs did not sustain their burden of establishing by a preponderance of the evidence that Mr. Schecher never intended to honor his guaranty. A plaintiff must prove every element of a cause of action under § 523(a)(2)(A), so the Plaintiffs' failure to prove this element is fatal to Count One.

Alternatively, the court finds that the Plaintiffs have failed to establish that they justifiably relied on any misrepresentation. One of the elements a plaintiff must establish to prevail under § 523(a)(2)(A) is that the creditor's "reliance was justified."[14] Specifically, the Supreme Court has explained that § 523(a)(2)(A) "requires justifiable, but not reasonable, reliance."[15] As such, "the purported victim of a misrepresentation is required to assess that representation in light of his particular knowledge or experience in the circumstances of the case."[16] Here, the Plaintiffs appear to harbor the belief that all they need to say is that they are recent immigrants and that satisfies their burden. That belief is inconsistent with the cases interpreting § 523(a)(2)(A). The justifiable reliance standard is not an objective one, but it does not relieve a plaintiff of all responsibility to assess a situation. Rather, the justifiable reliance standard asks a court to judge the assessment "by looking at the circumstances of a particular case and the characteristics of a particular plaintiff."[17]

Lu Yang testified that she graduated from college in China, and that she had some investment experience in China consisting of purchasing houses. From Ms. Yang's testimony it

---

[14] *In re Rossi*, 2013 WL 587315 (Bankr. D.N.J. Feb. 14, 2013)
[15] *Field v. Mans*, 516 U.S. 59, 74-75 (1995)
[16] *In re Santos*, 304 B.R. 639, 667 (Bankr. D.N.J. 2004)
[17] *Field* at 74

was clear that the Plaintiffs believed that the investment with Mr. Schecher was safe based solely on the fact that he offered his personal guaranty. Yet, neither of the Plaintiffs conducted any investigation into Mr. Schecher's personal worth. The Plaintiffs did not ask him for a personal financial statement, copies of bank statements, or tax returns. They did not know Mr. Schecher prior to their investment with him, so they had absolutely no personal knowledge of his ability to back up a personal guaranty. Nor could it be said that they relied on Mr. Schecher's word; Mr. Schecher was a stranger to the Plaintiffs, so they could not know if he was a man of his word. A personal guaranty offered by a person of no financial means is worthless. Yet, the Plaintiffs did not even attempt to ascertain if Mr. Schecher had any personal assets. Even for recent immigrants, the failure to even assess the validity of the investment they were entering into is not justifiable. The investment at issue here was for $200,000, so it was not an insubstantial sum. As the Seventh Circuit explained: "[j]ustifiable reliance is a less demanding standard than reasonable reliance; it requires only that the creditor did not 'blindly rely upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'"[18] Here, the Plaintiffs blindly relied on Mr. Schecher's personal guaranty and did not undertake even a cursory investigation; therefore, the court finds that the Plaintiffs' reliance on Mr. Schecher's personal guaranty was not justifiable.

**B. Dischargeability under 11 U.S.C. § 727(a)(4)**

A debtor may be denied a discharge under § 727(a)(4)(A) if the debtor knowingly and fraudulently, in or in connection with a case, made a false oath or account. To deny a debtor a discharge under this subparagraph, a plaintiff must establish that: (1) the debtor knowingly and fraudulently; (2) in or in connection with a case; (3) made a false oath or account; (4) regarding a

---

[18] *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010) (quoting *Field*, 516 U.S. at 71)

8

material matter.[19] In other words, for a false oath to bar discharge pursuant to § 727(a)(4) "the false statement must be both material and made with intent."[20] The question of a debtor's knowledge is one of fact, and fraudulent intent can be established "by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false."[21] A debtor's signature on the petition, made under penalty of perjury, is a declaration that has the force and effect of an oath of the kind encompassed by the discharge exception for making a false oath.[22] For purposes of § 727(a)(4) a "fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property."[23] Additionally, "[m]ateriality is judged not by the actual effect of the fraudulent misrepresentation or concealment, however, but by the effect it was capable of producing."[24]

The proper functioning of the entire bankruptcy process depends on a debtor providing complete, accurate, and reliable information in the petition and other documents submitted with the filing of the case so that parties in interest may evaluate a debtor's assets and liabilities and appropriately administer the case.[25] "Courts are often understanding of a single omission or error resulting from an innocent mistake, but multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive."[26]

The facts presented here are similar to those presented in *Bieniek*.[27] The debtors in that case asserted a "tragedy of errors" and claimed that their "twelve conceded omissions or mis-

---

[19] *Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (8th Cir. BAP 2011)
[20] *In re Unruh*, 278 B.R. 796, 803 (Bankr. D. Minn. 2002) (quoting *Korte* at 474)
[21] *Id.*
[22] *Jordan v. Bren (In re Bren)*, 303 B.R. 610, 613 (8th Cir. BAP 2004) (overruled on other grounds)
[23] *In re Retz*, 606 F.3d 1189, 1198 (9th Cir. 2010) (internal quotations omitted)
[24] *In re Guadarrama*, 284 B.R. 463, 475 (C.D. Cal. 2002)
[25] *Id.*
[26] *Bren* at 614
[27] *In re Bieniek*, 417 B.R. 133 (Bankr. D. Minn. 2009)

Case 13-01987-KCF    Doc 49    Filed 07/22/15    Entered 07/23/15 08:17:32    Desc Main
Document      Page 10 of 13

characterizations" were not material because the schedules had been amended and the non-disclosed assets had been turned over to the trustee. In this case, Mr. Schecher asserts a similar "no harm no foul" defense for his numerous omissions and inaccuracies. The *Bieniek* court rejected that defense finding that it "overlooks the fundamental role of voluntary, unequivocal, and complete disclosure elementary to the bankruptcy process."[28] The *Bieniek* court found that even if the case were merely a matter of confusion and neglect, the recklessness involved would rise to the level of malfeasance required to deny a discharge.

The court finds that the recklessness in this case rises to the level of malfeasance required to deny a discharge. Mr. Schecher failed to list any cars on his bankruptcy petition despite the fact that he had two cars titled in his name. Even if the court were to accept Mr. Schecher's explanation that he did not know that the 2011 Hyundai was titled in his name, he still failed to list his 2003 Infinity. It is not enough that the car was included in the bankruptcy worksheet he prepared for his attorney, because when a debtor signs a bankruptcy petition he is certifying that the information contained in it is complete and accurate. Standing alone, that omission would be insufficient to demonstrate an intent to make a false oath, but that omission must be considered along with his omission of his ownership interest in 16 companies, his failure to list his wife's income on Schedule I, and his misleading inclusion of a "spousal contribution" expense on Schedule J.

Mr. Schecher maintained that he did not list the 16 companies because they were merely shell companies whose only asset was a contract that did not come to fruition. The Statement of Financial Affairs does not ask a debtor to list only solvent companies in which a debtor held an interest in the preceding 6 years – it instructs a debtor to list **any** company in which the debtor held a greater than 5% interest. Mr. Schecher is an experienced business man who formed many

---

[28] *Id.* at 139

dozens of corporations over the years, it is improbable that he was confused about what was being asked. Significantly, Mr. Schecher's testimony regarding why he listed certain companies and not others on his bankruptcy petition was inconsistent. Mr. Schecher testified that the companies he included on the petition were the companies that had assets as of the petition date; however, the three companies that were listed on the bankruptcy petition were valued at "zero."

The court finds that Mr. Schecher's errors and omission in his Schedules and Statement of Financial Affairs were material because they related to his assets, property, and business dealings. It has been noted that nothing can be more material to a bankruptcy case than a failure to disclose the existence of a current or recently held business because this would severely hamper the ability to investigate the debtor's financial status.[29] Both creditors and the trustee need that information to determine if there are any undisclosed assets or causes of action such as preference or fraudulent transfer.

Finally, the court notes that when the debtor's numerous nondisclosures and inaccuracies came to light, Mr. Schecher did not amend his petition. He failed to do so despite the fact that one of his defenses at trial was that his petition was filed in a hurry because of an impending foreclosure. Where a debtor's underreporting or omission of assets is at issue, "no carelessness [can] excuse the Debtor's failure to amend his schedules promptly when he had the leisure to do so."[30]

In *DiLoreto*,[31] the Third Circuit found that a debtor's failure to disclose a beneficial interest in several corporations supported denial of a discharge under § 727(a)(4)(A). The same result is warranted here. The court finds that the Plaintiffs have sustained their burden on Count Two seeking denial of a discharge under § 727(a)(4)(A).

---

[29] *Scimeca v. Umanoff*, 169 B.R. 536 (D.N.J. 1993)
[30] *In re Zimmerman*, 320 B.R. 800, 810 (Bankr. M.D. Pa. 2005)
[31] *In re DiLoreto*, 266 Fed. Appx. 140 (3d Cir. Jan. 29, 2008)

**C. Attorney's fees and costs**

Count Three of the Amended Complaint seeks attorney's fees and costs under several different theories. The first theory is that the Plaintiffs are entitled to attorney's fees under 11 U.S.C. §§ 503(b)(3)(B) and 503(b)(4). Neither section applies here. Section 503(b)(3)(B) applies when a creditor recovers assets for the estate through an avoidance action, such as a fraudulent transfer or preference action. It does not apply when a creditor brings a complaint under § 523 or § 727. If § 503(b)(3) does not apply, then by its own terms § 503(b)(4) cannot apply. The Plaintiffs seek costs under Federal Rule of Bankruptcy Procedure 7054(b), which permits a court to allow costs to the prevailing party. That Rule is applicable because the Plaintiffs prevailed on Count Two. Finally, the Plaintiffs assert that they are entitled to attorney's fees under the terms of the parties' agreement. The Promissory Note that Mr. Schecher signed states in the third paragraph that in the event of a default Mr. Schecher was obligated to pay the entire balance due "plus all costs of collection, including reasonable attorney fees."[32] Under the American Rule, all parties are responsible for their own legal fees unless a statute, court rule, or contract expressly provides otherwise.[33] Here, the court has been presented with a contract, the Promissory Note, that expressly provides that in the event of default Mr. Schecher is responsible for all costs of collection. This adversary proceeding is an essential part of the Plaintiffs' ability to collect on this debt, so the attorney's fees associated with it fall within the ambit of "costs of collection." Therefore, the court will grant reasonable attorney's fees and costs to the Plaintiffs. Plaintiffs' counsel should submit a certification of services and costs to the court.

---

[32] Promissory Note; Ex. 5 (Exhibit F)
[33] *Litton Indus. v. IMO Indus.*, 200 N.J. 372 (2009)

<u>Conclusion</u>

Judgment is denied on Count One based on § 523(a)(2)(A). Judgment is granted on Count Two based on § 727(a)(4)(A). Judgment is granted on Count Three. Plaintiffs' counsel should submit a judgment in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
Chief Judge, US Bankruptcy Court

Dated: July 22, 2015